## CENTRAL TRANSFER CO. v. TERMINAL R. ASS'N OF ST. LOUIS et al.

### No. 9366.

Circuit Court of Appeals, Eighth Circuit.

Oct. 19, 1932.

Glendy B. Arnold, of St. Louis, Mo. (Roy M. Eilers, of St. Louis, Mo., on the brief), for appellant.

C. S. Burg and H. H. Larimore, both of St. Louis, Mo. (D. P. Connell, of Chicago, Ill., and W. N. Davis, A. H. Kiskaddon, M. G. Roberts, Harold R. Small, L. H. Strasser, Guy A. Thompson, Thomas W. White, Edward J. White, J. M. Bryson, E. T. Miller, N. S. Brown, and T. M. Pierce, all of St. Louis, Mo., on the brief), for appellees.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The appellant (plaintiff in the court below) filed its complaint on August 24, 1931, against the appellees (defendants) in the United States District Court for the Eastern District of Missouri, praying for injunctive relief under section 26, title 15, U. S. Code (15 USCA § 26). The cause of action stated in the complaint was that the defendants had entered into and were about to carry out an unlawful agreement, the effect of which would be to destroy the interstate transfer business of the plaintiff within the St. Louis and East St. Louis switching district and to restrain unduly interstate transportation of freight in less than carload lots by motortrucks within and between these cities, and to create an illegal monopoly of such business, in violation of sections 1 and 2, title 15, U. S. Code (15 USCA §§ 1, 2). The defendants in their answer asserted that the plaintiff was without legal capacity to sue, and that the agreement complained of was not unlawful. The case was tried, and the court made findings of fact and declarations of law, determining both issues in the defendants' favor. A decree of dismissal was entered, from which this appeal was taken.

The only dispute so far as the facts are concerned seems to be with respect to the purity or impurity of the motives of the carrier defendants in contracting with the defendant Columbia Terminals Company (hereinafter called the Columbia) to act as their sole agent in the transfer of less than carload freight between their off-track and on-track stations, and between their respective on-track stations, and in the maintenance of their off-track stations in the cities of St. Louis and East St. Louis.

The essential facts are not in dispute, and the first question for determination is whether the facts justify the court's conclusion that the plaintiff was without right to sue.

The plaintiff is a transfer or trucking company hauling freight, for hire, by motortruck within the St. Louis, Mo., and East St. Louis, Ill., district. With the exception of the Columbia, the defendants are common carriers by railroad of freight and passengers, and are subject to the Interstate Commerce Act (49 USCA § 1 et seq.). They constitute virtually all of the steam railroad lines having terminals in St. Louis or East St. Louis. The Columbia is, like the plaintiff, a transfer and trucking company engaged in the business of hauling freight between the off-track and on-track stations of the carriers and in interchange between their on-track stations in this same district. For many years before the complaint was filed, the carriers had designated off-track stations in St. Louis and East St. Louis where less than carload freight could be received and delivered. The rails of the carriers operating east of the Mississippi ended in East St. Louis, but their tariffs provided rates to and from St. Louis, and the service of transporting less than carload freight from the ends of their rails in East St. Louis to their off-track stations in St. Louis was performed by transfer companies severally employed by them. The carriers operating west of the Mississippi, whose terminals were in St. Louis, maintained off-track stations in certain sections of that city, and also employed transfer companies to transport less than carload freight between their off-track and on-track stations. The interchange of less than carload freight between the on-track station of one carrier and the on-track station of another carrier was also provided by transfer companies employed by the several carriers. The off-track stations were the places of business of the transfer companies, and were designated and named in tariffs on file with the Interstate Commerce Commission as points at which the carriers would receive and deliver less than carload freight. In 1918 there were four transfer companies performing services for the various carriers in the handling of less than carload freight billed to and from off-track stations and also in handling the interchange of such freight between on-track stations. By the time this complaint was filed, there were left only the plaintiff and the Columbia, the latter having acquired either the ownership or control of the other competitors at a time (1926) when the carrier defendants were contemplating entering into a joint arrangement with it for the purpose of having it act as their sole agent for the handling of their less than carload freight to and from off-track stations and for their interchange business in the St. Louis-East St. Louis district.

Carload freight moving between East St. Louis and St. Louis was handled by the Terminal Railroad Association of St. Louis, over its bridges and other terminal facilities, as the agent for all of the carriers.

In furtherance of the purpose formed during the year 1926 to limit the handling of their less than carload freight between their on-track and off-track stations, and in inter-

change, to one transfer company and to reduce the number of their off-track stations, the carriers filed on May 21, 1927, through their joint publishing agent, their tariff I. C. C. No. 1950, effective July 1, 1927, wherein they proposed to reduce the number of off-track stations in St. Louis from twelve to seven, and to reduce those at East St. Louis from two to one. The tariff provided for the application of rates to such off-track stations. Of the five off-track stations to be eliminated at St. Louis, two were operated by the Columbia and three by the plaintiff. At East St. Louis, the off-track station eliminated was operated by a transfer company controlled by the Columbia. Protests having been filed against the tariff, the Commission suspended the schedules and entered upon an investigation as to their lawfulness. Because of the investigation, the effective date of the tariff was postponed until November 1, 1931.

The Interstate Commerce Commission on November 1, 1927, began its hearing to determine the lawfulness of the methods proposed by the carriers for reducing the number of off-track stations. On May 13, 1929, its report was filed. 155 I. C. C. 129. The Commission reached the conclusion that the proposal of the carriers to employ a single transfer company for the operation of off-track stations and the haulage between such stations and the on-track stations of the railroads and in the interchange of freight between the carriers was not violative of any provision of the Interstate Commerce Act, and that the proposals to reduce the number of off-track stations in St. Louis and East St. Louis would not be harmful to the public interest.

The Commission, in the absence of a cost study, declined to approve the allowances which the carriers proposed to pay for the services of their sole agent, and directed that a cost study be made by the carriers. A further hearing as to the reasonableness of the proposed allowances was held by the Commission, and it filed its report on July 27, 1931, approving such allowances. 177 I. C. C. 316.

The off-track stations provided for in the tariff approved by the Commission, to become effective on November 1, 1931, were located only at the places of business of the Columbia. The schedules eliminated as off-track stations the places of business of the plaintiff and provided for the application of rates to only the off-track stations named in the tariff.

The plaintiff offered to become the sole agent of the carriers, but by contract dated June 1, 1931, the Columbia was employed to perform the services. The effect of this contract, so far as the plaintiff is concerned, will be to deprive it of the business of maintaining the off-track stations which it previously maintained for the carriers, and to take away from it the business of acting as the agent of any of the defendant carriers in the transfer of less than carload freight between off-track and on-track stations, and between on-track stations, and virtually to destroy its business, which consisted almost entirely of the performance of these services for the carriers.

For the purpose of determining whether the plaintiff may maintain this suit, it is not necessary to set forth in detail the provisions of the contract in question. It constitutes the Columbia the sole agent of the carriers for the maintenance of the off-track stations designated in the tariff, and for the transfer of less than carload freight. We shall assume, for the purpose of the argument, that the agreement is what the plaintiff asserts it to be, that it was entered into by the carriers for the purpose of destroying the business of the plaintiff, and that it will constitute an undue restraint upon interstate commerce, will create a monopoly, and will cause the plaintiff irreparable loss and damage.

Section 26, title 15, U. S. Code (section 16 of the Clayton Act [15 USCA § 26]) authorizes a corporation to sue for and have injunctive relief against threatened loss or damage by a violation of the anti-trust laws, "Provided, That nothing herein contained shall be construed to entitle any * * * corporation, (etc.) * * * except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of chapter 1 of Title 49, Transportation, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission."

The plaintiff asks no relief against the Columbia, which is not a carrier subject to the Interstate Commerce Act. Concededly, all the other defendants are carriers subject to that act. The only question then is whether the suit by the plaintiff is "in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission."

The plaintiff concedes that the services performed by the carriers in furnishing off-track stations and in transferring less than carload freight from on-track to off-track stations are matters over which the Interstate

Commerce Commission has jurisdiction. Quoting from the plaintiff's reply brief: "We have always conceded that the Interstate Commerce Commission has jurisdiction of the services performed by these transfer companies, and that the Commission may investigate the service to determine whether the carrier appellees have violated any of the provisions of the Interstate Commerce Act. There is no doubt about this jurisdiction of the Commission, but, as the Commission has correctly held, it has no jurisdiction to control the carriers' discretion in selecting their agents who perform the service."

It is the plaintiff's theory that, while the services to be performed under the contract, the cost of which is necessarily reflected in the rates contained in the tariffs filed with the Commission, are matters subject to the jurisdiction of the Commission, the agreement itself providing for such services and fixing compensation therefor is not such a matter, and therefore that a suit brought for injunctive relief against the performance of the agreement is not in respect to any matter within the jurisdiction of the Commission. It is asserted that the court may prevent the carrying out of the contract without affecting the services to be performed or the rates to be charged for such services. To separate the matter of the services required to be performed for the carriers by the Columbia from the agreement by which the railroads have contracted for their performance, and to enjoin the carrying out of the contract without affecting the services or the rates, would seem to require one of those delicate major operations which, while successful from a surgical standpoint, necessarily kills the patient. Under the plaintiff's theory, the court can enjoin the carriers from establishing off-track stations at the places of business of the Columbia as provided by the contract, but leave the tariffs designating such stations undisturbed; it may enjoin the carriers from employing the Columbia as their sole transfer agent, and yet leave undisturbed the services which the Columbia is to perform for the carriers at a stipulated cost, as well as the tariff rates which reflect the cost of such services. The suggestion seems to be that, with the performance of the contract enjoined, the carriers, without combining, can contract elsewhere for the services with the plaintiff or any one else; but how the stations designated in the tariff and belonging to the Columbia could be used with the carriers enjoined from performing their contract, or how other transfer companies not having a monopoly of the carriers' business could be compelled or even induced to perform the service of handling the less than carload freight between on-track and off-track stations so as to require no changes in the tariff, remains in obscurity.

Unquestionably, as the plaintiff concedes, the Interstate Commerce Commission had jurisdiction to investigate, as it did, the reasonableness and lawfulness of what the carriers proposed to do, namely, to reduce the number of off-track stations and to employ a single transfer company to maintain for them such stations and to receive and deliver less than carload freight from and to their off-track stations. In Smith v. Interstate Commerce Commission, 245 U. S. 33, 42, 38 S. Ct. 30, 32, 62 L. Ed. 135, the Supreme Court said: "The Interstate Commerce Act confers upon the Commission powers of investigation in very broad language and this court has refused by construction to limit it so far as the business of the carriers is concerned and their relation to the public. And it would seem to be a necessary deduction from the cases that the investigating and supervising powers of the Commission extend to all of the activities of carriers and to all sums expended by them which could affect in any way their benefit or burden as agents of the public. If it be grasped thoroughly and kept in attention that they are public agents, we have at least the principle which should determine judgment in particular instances of regulation or investigation; and it is not far from true—it may be it is entirely true, as said by the Commission—that 'there can be nothing private or confidential in the activities and expenditures of a carrier engaged in interstate commerce.'"

The charge for the terminal services to be performed by the Columbia with respect to less than carload freight was included in the carrier's rate for the line haul; and the service was one in the performance and cost of which the shippers were vitally interested. The services could have been performed by each carrier for itself or by all the carriers jointly, by each carrier employing an agent or agents to perform it, or by all the carriers together employing an agent or several agents. Had the carriers, with the approval of the Interstate Commerce Commission, combined and maintained their own off-track stations, purchased their own trucks and hauled for themselves their own less than carload freight, the arrangement pursuant to which that was done would, on the plaintiff's theory, be subject to the same attack which it makes upon this agreement. But could it logically be held that the plaintiff might en-

join the carriers from maintaining such stations and performing such services without asking injunctive relief in respect of a matter within the jurisdiction of the Interstate Commerce Commission? The fact that the Interstate Commerce Commission has no jurisdiction to name for the railroads the particular agency which shall perform the service of maintaining off-track stations and of transferring freight, its jurisdiction being regulatory and administrative and not managerial, is of no consequence. It is not the agency selected by the carriers that is the real matter in controversy, but rather the adoption by the carriers jointly of a method or practice of handling less than carload freight between off-track and on-track stations which eliminates the plaintiff as a competitor of the agency selected. Since the subject-matter of the agreement in so far as it affects these services and establishes a method and practice for handling less than carload freight moving in interstate commerce to off-track stations, designated in filed tariffs at rates specified in those tariffs is under the supervisory jurisdiction of the Commission, the plaintiff may not sue to enjoin performance of either the services or the contract through which they are provided, even though the Commission may not control the carriers' selection of an agency.

In Wheeling & Lake Erie Ry. Co. v. Pittsburgh & West Virginia Ry. Co., 33 F.(2d) 390 (C. C. A. 6), a stockholder sought to enjoin a carrier from abandoning a certain passenger station in Cleveland or from entering into any contract with the Cleveland Union Terminals Company, a corporation organized to build a union station at the Public Square in Cleveland, whereby the Terminals Company would have a right to enter upon the site of that station to make excavations, until a certificate of public convenience and necessity had been obtained from the Interstate Commerce Commission. Other details clouded the case, but it was assumed that the plaintiff sought injunctive relief only with respect to this proposed agreement, which had not been approved by the Interstate Commerce Commission. The District Court had granted an injunction. The Court of Appeals vacated the order, and certiorari was later denied by the United States Supreme Court, 280 U. S. 593, 50 S. Ct. 40, 74 L. Ed. 640. That the Court of Appeals regarded even the contract as a matter subject to the jurisdiction of the Interstate Commerce Commission is apparent. We quote the following language [page 393 of 33 F.(2d)] : "Nor is there any basis for the injunction in the

Clayton Act. All the matters complained of under that act are subject to the regulation and supervision of the Interstate Commerce Commission, and by the express terms of the act no one, except the United States, is authorized to bring a suit in equity thereunder for injunctive relief, in respect of any matter subject to the regulation and supervision of the Commission. * * * If the Commission should not give its approval to the contract of December, 1928, the property of the Wheeling Company will be restored to the condition that it was in when the work was begun. In the meantime that company is receiving more than $5,000 a month rent while the work is in progress. This, in view of other provisions of the contract, seems to be an entirely adequate rental. If the contract should be approved by the Commission, there will be an administrative determination by an expert body, entitled to the greatest weight, that the arrangement is just and reasonable. If it should not be approved as drawn, the Commission has the power either to reject it entirely or to approve it upon terms that the Commission deems fair to all parties interested, including the stockholders. The plaintiff has the right to present its views of these matters to the Commission, and, if it is dissatisfied with the decision of that tribunal, it may go further and present them to the courts."

The purpose of the proviso in section 26, title 15, U. S. Code (15 USCA § 26), clearly is to prevent private interference by way of injunction with the business of interstate carriers in which the rights of the shippers and the public generally are necessarily superior to those of any individual, and to leave suits for injunctive relief against interstate carriers, based upon a violation of the anti-trust laws, with respect to all matters under the jurisdiction of the Interstate Commerce Commission, to be initiated by the United States as the representative of the public.

If the method which the carriers have adopted to solve the problem of maintaining off-track stations and of handling less than carload freight in the St. Louis-East St. Louis district is a violation of the anti-trust laws, the United States can bring suit to enjoin, but the plaintiff cannot. Apparently, however, all that the carriers have done is to arrange jointly for the performance of a terminal service for less than carload freight not differing substantially from the service performed by the Terminal Association with respect to carload freight. See United States v. Terminal R. R. Association of St. Louis, 224 U. S. 383, 32 S. Ct. 507, 56 L. Ed. 810;

Terminal R. R. Association of St. Louis v. United States, 266 U. S. 17, 45 S. Ct. 5, 69 L. Ed. 150.

We do not find any case which involves the precise question here presented. Perhaps the nearest approach to it was Keogh v. Chicago & Northwestern Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183, which was an action to recover damages for alleged violation of the anti-trust laws. The plaintiff, who was a manufacturer, charged that certain carriers, through an unlawful combination, had increased the rates on commodities of which he was a shipper, and sought damages to the extent of the difference between what he had paid under the higher rates contained in the tariffs filed with the Commission and what he would have paid under the lower rates which had previously prevailed. He also claimed damages to his factory through lost profits. He asserted (page 159 of 260 U. S., 43 S. Ct. 47, 67 L. Ed. 183): "The mere fact that the increased rates were filed with the Commission and published by the defendants separately, does not exempt them from liability under the Anti-Trust Act for their unlawful acts in agreeing jointly upon the rates."

Apparently, it was his thought that the agreement and the rate effected by it could be dealt with separately. The court said (page 161 of 260 U. S., 43 S. Ct. 47, 49, 67 L. Ed. 183): "But under the Anti-Trust Act, a combination of carriers to fix reasonable and nondiscriminatory rates may be illegal; and if so, the government may have redress by criminal proceedings under section 3 (15 USCA § 3), by injunction under section 4 (section 4), and by forfeiture under section 6 (section 6). That was settled by United States v. Trans-Missouri Freight Association, 166 U. S. 290, 17 S. Ct. 540, 41 L. Ed. 1007, and United States v. Joint Traffic Association, 171 U. S. 505, 19 S. Ct. 25, 43 L. Ed. 259. The fact that these rates had been approved by the Commission would not, it seems, bar proceedings by the government. It does not, however, follow that Keogh, a private shipper, may recover damages under section 7 [15 USCA § 15] because he lost the benefit of rates still lower, which, but for the conspiracy, he would have enjoyed. There are several reasons why he cannot."

It was pointed out that a rate is not necessarily illegal because it is the result of conspiracy in restraint of trade in violation of the Anti-Trust Act, that no violation of any of the plaintiff's legal rights had occurred

because of the collection of the tariff rate, and, furthermore, that there was no proper basis for the determination of damages. The case clearly indicates that, with respect to matters involving a rate or service subject to the jurisdiction of the Interstate Commerce Commission, only the government may sue to enjoin the combination or agreement upon which it is based.

In the case of General Investment Co. v. New York Cent. R. Co., 23 F.(2d) 822, 824 (C. C. A. 6), a contention somewhat analogous to that of the plaintiff in the case before us was made. The matter there complained of was the consolidation of parallel railroads. It was suggested that the court might separate the intrastate business from the interstate business of the road, and apply the anti-trust laws of the state in so far as intrastate commerce was concerned. The court, after stating that the proviso of section 16 of the Clayton Act (15 USCA § 26) applied whenever "any subject-matter pertaining to interstate commerce is vested in the Interstate Commerce Commission," that Congress had assumed jurisdiction of and legislated upon the subject-matter of the consolidation of railroad carriers doing an interstate business, and that the matter was within the jurisdiction of the Interstate Commerce Commission, said [page 825 of 23 F.(2d)], "This being so, upon the allegations of plaintiff's bill, the alleged combination in restraint of intrastate commerce is so inextricably interwoven with the restraint of interstate commerce that it is impossible to render a judgment with respect thereto without at the same time adjudging as to the combination in restraint of interstate commerce. So to do would be indirectly permitting a private party to do that which it is forbidden to do directly."

So, in this case, it is apparent that to enjoin the carriers from performing the contract with the Columbia would result in permitting the plaintiff to do indirectly that which the proviso of section 16 of the Clayton Act prohibits it from doing directly.

Our conclusion is that the suit brought by the plaintiff against these carriers is in respect of a matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission, and therefore that the court below was correct in holding that the plaintiff had not the right to bring it.

That being true, there is no occasion for our discussing the question as to whether the agreement between the carriers and the Co-

lumbia is violative of the anti-trust laws; since that question could properly be considered only in a suit in which injunctive relief was sought by the United States.

Affirmed.