**KEITH RY. EQUIPMENT CO. v. ASSOCIATION OF AMERICAN RAILROADS et al.**

No. 44C670.

District Court, N. D. Illinois, E. D.

March 11, 1946.

918

William J. Terrell, of Chicago, Ill., for plaintiff.

E. E. McInnis, Gen. Counsel, Atchison, T. & S. F. Ry. Co., of Chicago, Ill., for carrier defendants.

Sidley, Austin, Burgess & Harper, of Chicago, Ill., for other defendants.

CAMPBELL, District Judge.

### The Amended Complaint.

This action arises under Sections 1 and 7 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C.A. §§ 1, 15, wherein plaintiff seeks triple damages for an alleged conspiracy in restraint of interstate commerce.

The plaintiff alleges in its amended complaint that it is the owner of railroad tank cars which it rented to certain railroads for a fixed sum per mile, but that it is not a shipper of any liquid commodities carried therein; and that such cars are therefore customarily known in the business as "freight cars of private ownership owned by others than shippers."

Plaintiff further alleges that on or about June 16, 1939, the defendant Association of American Railroads informed the plaintiff by mail that the Association had adopted, by vote of its membership, a rule, known as per diem rule 18, establishing the mileage rate to be paid by all members of the Association for the use of plaintiff's tank cars. The owners of so-called "TM" and "TMI" cars were to receive a mileage rate of 1½¢ per mile, which was the rate which had customarily been paid for a number of years by railroads to this plaintiff and other owners of such tank cars. All of the petroleum freight rates prescribed and ordered by the Interstate Commerce Commission were predicated upon the 1½¢ per mile paid by the carriers to the car owners for the use of such equipment.

Plaintiff further alleges that pursuant to the aforesaid combination, the defendant Association, on or about July 28, 1939, through the defendant Lester R. Knott, Secretary of its Operation and Maintenance Department, wrote to the plaintiff demanding its adherence not later than September 30, 1939, to the per diem rule 18, "now in effect or as hereafter amended," as a

prerequisite to obtaining or retaining certain reporting marks or code letters on its cars, necessary to identify and distinguish them.

Plaintiff further alleges that it failed to enter into said agreement until March 18, 1940, when it executed the agreement under the duress of a threatened boycott by the aforesaid defendants of the plaintiff through their refusal to permit any American railroad to use any car owned by plaintiff. Plaintiff does not assert any pecuniary damage suffered at that time in a manner subject to computation, but alleges merely the loss of freedom of contract with present and future users of its cars.

Plaintiff also alleges that it was likewise compelled to assent to a Mechanical Interchange Rules Agreement on February 24, 1940, giving the railroads constituting the aforesaid Association unilateral control of the mechanical condition of plaintiff's cars, of the repairs to be made thereon, and of the prices to be paid for such repair. Plaintiff does not assert any pecuniary damage, in a manner subject to computation, by this series of acts.

Plaintiff further alleges that in January, 1942, the Interstate Commerce Commission, on petition of the Association, granted the railroads an increase in freight rates on petroleum products hauled in TM and TMI cars (among other freight increases), and that the authorization of such increase took into account the mileage rate which had customarily been paid for many years for the use of tank cars by railroads. In the early part of 1943 the Interstate Commerce Commission reconsidered its order and reduced the rates, despite the opposition of the Association based upon the 1½¢ per mile payment for the use of tank cars.

Plaintiff further alleges that because of the war emergency, there was formed, at the suggestion of federal officials, an association of the owners of privately owned tank cars. The principal purpose of this association was to provide, by assessment according to the number of cars which each member owned, funds for salaries of members of the Office of Defense Transportation for which insufficient government funds had been allocated. Out of these funds was maintained the official in charge of tank car service of the Office of Defense Transportation, who had control of the disposition and routing of all TM and TMI tank cars during the emergency. The defendant General American Transportation Corporation, by reason of its ownership of a large proportion of tank cars, contributed a substantial portion of the annual salary of this official.

Plaintiff further alleges that, following the aforesaid rate reduction by the Interstate Commerce Commission, the defendants, together with other persons unknown to the plaintiff, conspired to avoid the effect of the freight rates established by the Commission, by reducing transportation costs to the carriers. The defendant General American Transportation Corporation, a large competitor of plaintiff, and defendant Lester N. Selig, president of the General American Transportation Corporation, joined in the aforesaid combination on or about August 16, 1943.

Plaintiff further alleges that in furtherance of this conspiracy, the Association filed with the Interstate Commerce Commission its supplement No. 8 to mileage tariff No. 7M (I.C.C. No. 3690), whereby the mileage rate allowance to shipper owners of tank cars of class "TM" was reduced from 1½¢ to 1¼¢ per mile, effective September 1, 1943. On August 13, 1943, the Association amended its per diem rule 18, so that as to TM and TMI cars of private ownership other than shipper ownership, the rate paid by the railroads was likewise reduced to 1¼¢ per mile effective August 15, 1943, except that this reduction did not apply in California, Nebraska, or Texas intrastate traffic. These parallel mileage reductions were made by the Board of Directors of the Association of American Railroads, in furtherance of the aforesaid conspiracy to restrain trade and commerce among the states.

Plaintiff further alleges that it refused to accept this action of the Association in amending per diem rule 18, and on August 13, 1943, wrote each railroad member of the Association notifying them that it canceled its agreement to abide by amendments to per diem rule 18 and demanding that it be paid at the rate of 1½¢ per mile for the use of its cars.

Plaintiff further alleges that on August 16, 1943, the defendant Lester N. Selig, individually and on behalf of the defendant General American Transportation Corporation, by telephone and by telegram, urged Fred W. Souerbry, Jr., vice-president of the plaintiff, to withdraw his letter of cancellation; and in the telegram (a copy of which is attached to the Amended Complaint as Exhibit A) warned that plaintiff's cars would be taken over by the Office of Defense Transportation and assigned to

920

services which would have a deleterious effect on plaintiff's earnings. As a result, plaintiff withdrew its cancellation on August 17, 1943, and agreed to abide by the amendment to per diem rule 18.

Plaintiff further alleges that the reduction in said mileage rate, although amounting to only 16⅔% of its gross revenues, amounts to more than 50% of its net revenues. The difference between the rental price paid to plaintiff under the 1¼¢ mileage rate, and the amount which plaintiff would have received if the mileage rate had remained at 1½¢, is alleged to be $79,364.23, for which plaintiff prays triple damages and costs.

### Defendants' Motions.

The carrier defendants have moved for summary judgment dismissing the suit, or, in the alternative, for an order staying further proceedings herein until plaintiff procures an order of the Interstate Commerce Commission fixing a reasonable compensation for the use of plaintiff's tank cars and determining other administrative questions, because: (1) The complaint fails to state a claim on which relief can be granted, since the issue presented is not juristic but hypothetical, in that the "natural conditions of demand" on which plaintiff bases its claim did not exist during the war period for which plaintiff sues, August 15, 1943, to December 31, 1944; (2) the court lacks jurisdiction over the subject matter of the suit, since Congress has given the Interstate Commerce Commission exclusive jurisdiction to determine reasonable compensation for railroad use of privately owned cars, and therefore plaintiff's rights arise exclusively under the Interstate Commerce Act, not under the Sherman Act.

The defendants General American Transportation Corporation and Lester N. Selig move to dismiss the plaintiff's amended complaint on these grounds: (1) The amended complaint fails to state a claim against these defendants; (2) plaintiff has not been injured in its business or property by reason of anything described therein; (3) the subject matter of the amended complaint and the legality of the mileage rate are within the exclusive jurisdiction of the Interstate Commerce Commission. In the alternative, these defendants move for an order staying further proceedings in this cause until plaintiff procures an order from the Interstate Commerce Commission fixing a tank car mileage rate and determining other administrative questions.

■ It is the opinion of the Court that the defendants' contention that the complaint fails to state a claim is not well taken. The plaintiff pleads a conspiracy of the defendants which resulted in a diminution of the income derived from its rental to the railroads of tank cars for the interstate transportation of liquid commodities. This is sufficient to state a cause of action under the Sherman Act.

■ The defendants' contention that this court lacks jurisdiction of the subject matter, because the Interstate Commerce Commission has exclusive jurisdiction to determine the compensation to be paid for the use of privately owned cars, is likewise not well taken. The Commission's exclusive jurisdiction to set rates does not deprive the courts of jurisdiction in cases arising under other rules of law, in which such rates may be relevant as a measure of damages. General American Tank Car Corporation v. El Dorado Terminal Co., 1940, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361.

■ Defendants suggest also that even if the court has jurisdiction, the remedy is not triple damages under the Sherman Act, but single damages under the Interstate Commerce Act, Sections 8 and 9, 49 U.S.C. A. §§ 8 and 9. Persons injured by violations of the Interstate Commerce Act, such as the granting of preferences to competitors, are limited to the remedies prescribed in the Commerce Act, and may not sue for triple damages under the Sherman Act, unless they can show the preferences are part of a larger scheme to monopolize or restrain commerce. Terminal Warehouse Co. v. Pennsylvania Railroad Co., 1936, 297 U.S. 500, 56 S.Ct. 546, 80 L.Ed. 827. The plaintiff in the instant case however explains the participation of the competing General American Transportation Corporation in the tank car rental reduction scheme as part of a plan to drive competitors, such as the plaintiff, out of business, and until the plaintiff has opportunity to present its evidence in this regard the Court is unable to rule on this phase of the present case.

■ Keogh v. Chicago & Northwestern Railway Co., 1922, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 cited by defendants, is distinguishable on its facts. Since plaintiff is not a shipper, its possible recovery of triple damages will not result in a preference, the prevention of which is the reason for the "stringent rule" of the Keogh case. 260 U.S. 156 at 163, 43 S.Ct. 47, 67 L.Ed. 183. Tigner v. Texas, 1940, 310 U.S. 141, 60 S.

Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321, cited by defendants and involving the constitutionality of a state anti-trus. law, adds nothing for the purposes of the present case. Likewise, Georgia v. Pennsylvania Railroad Co., 1945, 324 U.S. 439, 65 S.Ct. 716, merely says, inter alia, that the State of Georgia, suing under federal anti-trust laws for her own injuries and for injuries to the economy of Georgia resulting from rate discrimination, may not recover damages, under the rule of the Keogh case, 324 U.S. at 453, 65 S.Ct. 724.

■■ The plaintiff is not seeking speculative damages based on a hypothetical rate, condemned in the Keogh case. It is seeking measurable damages based on the decrease in rental paid for the use of its tank cars, which decrease was effected by an alleged combination of the defendants. Nor was plaintiff seeking to profit from the existence of the war-time emergency. It merely sought the maintenance, during the period in question, of the prevailing rate. In a period of rising costs and prices, plaintiff was not, on the face of the complaint and for the purpose of these motions, acting unreasonably.

The motions of both groups of defendants to dismiss the action are therefore denied.

■ For the purpose of deciding the case on the merits, however, the case must first be referred to the Interstate Commerce Commission for a finding as to the proper rental chargeable for tank cars furnished by non-shippers. Since the amendment of 1940, there seems to be no doubt that the Commission has jurisdiction over such rates. Section 1(14) (a) of the Interstate Commerce Act, 49 U.S.C.A. § 1(14) (a), provides that the Commission may determine the compensation to be paid for the use of any vehicle "not owned by the carrier using it (and whether or not owned by another carrier)." The measure of damages suffered by the plaintiff, if any, in this case, depends wholly on the Commission's findings with respect to tank car rentals.

Therefore, defendants' alternative motions to stay the proceedings herein are granted. The plaintiff is directed to proceed before the Interstate Commerce Commission to obtain a ruling on the rental chargeable for plaintiff's tank cars during the period in question in this suit. This cause is continued generally pending such ruling.

Upon the issuance of such ruling by the Commission, the plaintiff is directed to file same as an amendment to the complaint. If the rate is set at 1¼¢ per mile or less the cause will be dismissed for lack of damages. If it is set at more than 1¼¢ per mile, the cause will proceed to trial on the factual issues as to the alleged conspiracy.

If the plaintiff does not act within a reasonable time to obtain a ruling by the Commission, the defendants may move to dismiss the action in this court.

The Clerk is directed to enter appropriate orders accordingly.