**Morton L. MINSKY, Individually and on behalf of all others similarly situated, Plaintiff-Appellant,**

v.

**AUTO DRIVEAWAY, et al., Defendants-Appellees.**

No. 82–1972.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1982.

Decided April 18, 1984 [*].

Opinion March 20, 1985.

[*] This appeal was originally decided by an unpublished order on April 18, 1984 pursuant to Circuit Rule 35. 734 F.2d 18. The Court has subsequently decided to issue that decision as an opinion.

Mark H. Hellman, Chicago, Ill., for plaintiff-appellant.

Anthony S. DiVincenzo, Chicago, Ill., for defendants-appellees.

Before BAUER, POSNER, Circuit Judges, and HOFFMAN, Senior District Judge.**

PER CURIAM.

Plaintiff, Minsky, appeals from the order of the District Court dismissing plaintiff's complaint for failure to state a claim. In this appeal, plaintiff contends that the District Court's reliance on *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), in dismissing the complaint is illfounded.

The corporate defendants, Auto Driveaway Company (Auto Driveaway), AAAcon Transport, Inc. (AAAcon), and Nationwide Auto Transporters, Inc. (Nationwide), provide casual automobile driveaway services and are subject to the jurisdiction of the Interstate Commerce Commission (ICC). The individual defendants are current or former employees of the corporate defendants. The companies transport vehicles by having them driven, under their own power, by employed "casual" drivers who are non-professional drivers retained from among the general public.

In 1974, the companies submitted a proposal for collective ratemaking to the ICC, *see* 49 U.S.C. § 10706, which was finally denied in January 1979. During the period of 1974 to 1979, each of the companies submitted individual rates to the ICC which became effective thirty days after submission without any affirmative action on the part of the ICC.

On September 29, 1980, a federal grand jury indicted the three companies, charging that they had engaged in a combination and conspiracy to fix rates for the casual automobile driveaway services in violation of the antitrust laws. AAAcon plead *nolo contendere* to the charges and was fined $150,000, Nationwide plead guilty and was fined $100,000, and Auto Driveaway was found guilty by a jury and fined $100,000.

On September 14, 1981, plaintiff brought this class action against defendants based on the same conduct which was the subject of a criminal indictment. Plaintiff is seeking treble damages for violation of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, and section 4 of the Clayton Act, 15 U.S.C. § 15. On November 30, 1981, defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) on the grounds that the ICC had exclusive jurisdiction over any dispute related to rates and that defendants' compliance with the published tariffs was a defense to plaintiff's claims. On May 24, 1982, the District Court dismissed the complaint for failure to state a claim upon which relief may be granted. In a minute order the court stated:

> The court grants defendants' motion to dismiss for failure to state a claim upon which relief may be granted.... Plaintiff has not and cannot show that he has any legal right to a rate lower than that approved by the ICC. In the absence of a legal right, there is no legal injury. See *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156 [43 S.Ct. 47, 67 L.Ed. 183] (1922), and *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439 [65 S.Ct. 716, 89 L.Ed. 1051] (1944) [sic]....

*Keogh* involved an antitrust action by a shipper against rail carriers. The rail carriers established uniform rates which were then submitted to the ICC and approved after hearings. The Supreme Court, in a unanimous decision, held that the plaintiff could not recover under the antitrust laws. Justice Brandeis, writing for the Court, stated:

** The Honorable Walter E. Hoffman, Senior Judge of the United States District Court for the Eastern District of Virginia, is sitting by designation.

[U]nder the Anti-Trust Act, a combination of carriers to fix reasonable and non-discriminatory rates may be illegal; and if so, the Government may have redress by criminal proceedings under § 3, by injunction under § 4, and by forfeiture under § 6.... It does not, however, follow that Keogh, a private shipper, may recover damages under § 7 because he lost the benefit of rates still lower, which, but for the conspiracy, he would have enjoyed....

A rate is not necessarily illegal because it is the result of a conspiracy in restraint of trade in violation of the Anti-Trust Act. What rates are legal is determined by the Act to Regulate Commerce.... If the conspiracy here complained of had resulted in rates which the Commission found to be illegal because unreasonably high or discriminatory, the full amount of the damages sustained, whatever their nature, would have been recoverable in such proceedings....

The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.

260 U.S. at 161–63, 43 S.Ct. at 49–50.

The sole question in this appeal is the continued validity of *Keogh*. Plaintiff argues that *Keogh* is no longer valid law and thus dismissal was improper.

Plaintiff's argument that *Keogh* can no longer be followed is unconvincing. Even though the Supreme Court has not recently expressly reaffirmed the principles established in *Keogh*, it has favorably referred to *Keogh* on several occasions. *See, e.g., McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). This Circuit also has continued to recognize *Keogh* as valid law. *See Board of Trade v. Interstate Commerce Commission*, 646 F.2d 1187, 1193 (7th Cir.1981); *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619, 622 (7th Cir. 1979). *See also Indiana Harbor Belt Railroad Co. v. United States*, 510 F.2d 644, 649 (7th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 46 L.Ed.2d 115 (1975); *Danna v. Air France*, 463 F.2d 407, 409 (2nd Cir.1972). Likewise other Circuits have continued to recognize *Keogh* for the principles it established. *See City of Groton v. Connecticut Light & Power Co.*, 662 F.2d 921, 929 (2d Cir.1981); *Essential Communications Systems, Inc. v. American Telephone & Telegraph Co.*, 610 F.2d 1114, 1121–22 (3d Cir.1979); *Cleary v. Chalk*, 488 F.2d 1315, 1324 n. 63 (D.C.Cir. 1973), *cert. denied*, 416 U.S. 938, 94 S.Ct. 1940, 40 L.Ed.2d 289 (1974). *See also Chicago & North Western Railroad Co. v. Union Packing Co.*, 514 F.2d 30, 33 (8th Cir.1975).

■ *Keogh* is still valid law and it was proper to apply it to this case. A tariff that is filed with the ICC and which becomes effective is the legal rate and establishes the legal rights of the parties until it is determined by the ICC to be unreasonable or discriminatory. A customer of a carrier, who was charged the filed rate, *cannot* maintain an antitrust suit against the carrier for an alleged conspiracy in setting the rate.

■ For the reasons discussed above, the order of the District Court dismissing plaintiff's complaint for failure to state a claim upon which relief may be granted is AFFIRMED.