Louis G. BERNING, Plaintiff-Appellant,

v.

Fred GOODING, Ray Obendorf, Peter Rooney, George Signoratti, Herman Goschie, Robert Coleman, Bill Gasseling, Harlin Shinn, Melvin Newhouse, Ken Desserault, Alcid Roy, Mike Koreski, Rip Riel, and Robert H. Eaton, Defendants-Appellees.

No. 86–3596.

United States Court of Appeals,
Ninth Circuit.

Submitted June 2, 1987 *.

Decided July 9, 1987.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John F. Neupert, Portland, Or., for plaintiff-appellant.

Charles J. Merten and Paul T. Fortino, Portland, Or., for defendants-appellees.

Before ANDERSON, FARRIS and BRUNETTI, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Louis G. Berning (Berning) is an Oregon resident who was a producer of hops. When his business for producing and growing hops failed, he brought this antitrust suit against Fred Gooding and the other named defendants alleging the failure was the result of their price fixing scheme which caused hop prices to fall. Berning alleged violation of the Clayton Act and sought treble damages under 15 U.S.C. § 15(a). He also sought relief on a pendent state claim.

The defendants are hop growers and members of the Hop Administrative Committee (HAC). (One defendant, Robert Eaton, was not a grower but was a manager of the HAC). Members of the HAC are selected by the Secretary of Agriculture (Secretary). 7 C.F.R. § 991.25 (1985). The HAC was created pursuant to the Agricultural Adjustment Act (the Act), 7 U.S.C. § 601 *et seq.* The Act empowers the Secretary to "establish and maintain ... orderly marketing conditions for agricultural commodities" so that farmers will receive "parity prices" for their commodities. 7 U.S.C. § 602(1). The Act allows the Secretary to issue orders for certain commodities, including hops. 7 U.S.C. §§ 608c(1) and (2). The orders regulate the production of the commodity. 7 U.S.C. § 608c(1). Hop orders may contain terms "limiting ... the total quantity produced during any specific period or periods" and "apportioning ... the total quantity of hops of the then current calendar year permitted to be handled equitably among all producers...." 7 U.S.C. § 608c(6)(G)(i) and (ii). In this, the Secretary has the power to enter into marketing agreements to adjust the acreage of hops in production. *See* 7 U.S.C. §§ 608(2) and 608b. The duty of the HAC is to submit information to the Secretary and recommend a marketing policy to establish a salable quantity and allotment percentage for hop growers. 7 C.F.R. § 991.36.

Berning's complaint alleged that members of the HAC met, agreed, and conspired to fix the price of hops and the quantity of hops to be produced. This was allegedly accomplished by the HAC agreeing to recommend to the Secretary high salable percentages without considering (1) the recommendation of the Hop Advisory Board; (2) the quantity of hops that should be made available for marketing to meet market requirements and to establish orderly marketing conditions; (3) the prospective carrying of producers, handlers, and brewers; (4) the desirable carryout; (5) the prospective imports; and (6) other factors affecting market conditions, as required by 7 C.F.R. § 991.36. Berning also alleged an antitrust violation in that the defendants, as members of the HAC and as producers of hops, contracted above the salable percentages allowed by the orders and entered into these contracts for sale before their HAC recommendations were adopted by the Secretary.

The district court dismissed Berning's complaint with prejudice for failure to state a claim. 643 F.Supp. 26. Berning appeals that dismissal. We affirm.

## STANDARD OF REVIEW

■ We review *de novo* an order dismissing a complaint for failure to state a claim. *Alonzo v. ACF Property Management, Inc.*, 643 F.2d 578, 579 (9th Cir.1981). A court may dismiss a complaint for failure to state a claim for relief under Fed.R. Civ.P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In an antitrust action, the complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 760 (9th Cir.1980).

## ANALYSIS

Berning's argument that the members of the HAC are liable for an antitrust violation is without merit. In *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986), consumers of services provided by motor carriers brought an antitrust action, Sherman Act, 15 U.S.C. § 1, *et seq.*, against the motor carriers and their tariff bureau. The tariff bureau engaged in collective ratemaking for rates approved by the ICC. The consumers alleged the carriers agreed to fix prices by filing illegal rates with the ICC, helping set illegal rates, and not complying with the approved rates. *Id.* at 1924.

The Supreme Court affirmed dismissal of the suit, finding that the ICC had approved the rates set and therefore established the lawfulness of the carrier's actions. *Id.* at 1927. The Court's reasoning was that antitrust injury implies violation of a legal right. Since the legal rights at issue, i.e., the shipping rates, were approved by the ICC, there was no violation of a legal right or antitrust injury. *Id.* at 1926 (quoting *Keogh v. Chicago N.W.R. Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922)).

The Court in *Square D* specifically found that the issue of whether or not there was liability was improperly characterized as an issue of "immunity." *Id.* at 1929. Rather, the Court posed the rule as, "an award of treble damages is not an available remedy for a private shipper claiming the rate submitted to, and approved by, the ICC was the product of an antitrust violation." *Id.*

■ We find *Square D* controls here and Berning has no available remedy for the conduct he alleges. The marketing policy as established by the Secretary's orders and the marketing agreements entered into are not promulgated by the HAC. The HAC only makes nonbinding recommendations to the Secretary who sets the marketing order. *See* 7 C.F.R. § 991.36. It is the Secretary who issues the orders, enters into marketing agreements and determines the salable quantity of hops. *See* 7 U.S.C. §§ 608c(2) and 608b; 7 C.F.R. § 991.37. The HAC recommendations have no legal effect in themselves.

Collective ratemaking activities are not immunized from antitrust activity because they occur in a regulated activity, and antitrust exemptions are strictly construed. *Square D*, 106 S.Ct. at 1929. Nevertheless, the conduct alleged here should not be subject to the Clayton Act given the advisory role which the HAC fulfills. The antitrust conduct alleged is not a private conspiracy to eliminate competitors by illegal means. Whether or not the HAC failed to follow the six factors established in 7 C.F.R. § 991.36 is irrelevant. The Secretary still sets the salable quantity and allotment percentages.

Finally, even if individual members of the HAC did not, as growers, adhere to the salable quantity or allotment fixed for them, this is still not the type of conduct which is subject to a private antitrust remedy. *Id.* at 1929. Such conduct may disqualify the grower from the benefits of the Act or subject him to forfeiture of the excess value of his crop. 7 U.S.C. § 608a(5). It will not, however, give rise to a private antitrust treble-damages remedy. The judgment of the district court is affirmed.

AFFIRMED.