BIG RIVERS ELECTRIC
CORPORATION,

and

NSA, Inc., Commonwealth Aluminum Corporation and Alcan Aluminum Corporation, Plaintiffs–Intervenors,

v.

William H. THORPE; Shirley Pritchett; Eddie R. Brown; Denise Thorpe Perkins; Clyde Brown; Buddie R. Morris, II, Executor of the Estate of Buddie R. Morris; and E & M Coal Company, Defendants.

In re GREEN RIVER COAL
CO., INC., Debtor.

BIG RIVERS ELECTRIC
CORPORATION,
Plaintiff

v.

GREEN RIVER COAL CO.,
INC., Defendant.

Nos. 93–cv–110, 95–cv–107.

United States District Court,
W.D. Kentucky,
Owensboro Division.

March 29, 1996.

tung, Greenebaum Doll & McDonald, Louisville, KY, Thomas E. Neal, John W. Stevenson, Connor, Neal & Stevenson, Owensboro, KY, David V. Miller, George C. Barnett, Greg A. Granger, Bowers, Harrison, Kent & Miller, Evansville, IN, for Eddie R. Brown, E & M Coal Co.

William F. Polk, Jr., Phillip Dane Shields, Sandra D. Freeburger, Deitz & Freeburger, Henderson, KY, for Shirley Pritchett.

John Tim McCall, Louisville, KY, for Denise Thorpe Perkins.

Bill R. Paxton, Jonathan King, Paxton & King, PLC., Central City, KY, Bart Adams, White, Conway & Adams, Louisville, KY, Jack Fowler, Mt. Carmel, IL, for Clyde Brown, Jr.

Jeff S. Taylor, Owensboro, KY, Roger V. Barth, Curtis, Mallet–Prevost, Colt & Mosle, Washington, DC, for Buddie R. Morris, Jr.

John R. Leathers, Stephen G. Allen, Buchanan & Ingersoll, Lexington, KY, Thomas L. Vankirk, Buchanan Ingersoll, P.C., Pittsburgh, PA, for Green River Coal Company, Inc.

Merrill S. Schell, John P. Reisz, M. Stephen Pitt, Wyatt, Tarrant & Combs, Louisville, KY, Bobbie T. Shell, Baker & Botts, L.L.P., Dallas, TX, for Texas Commerce Bank National Association, Banque Paribas, Den Norske Bank A.S., Norwest Bank Denver, N.A., National Associates.

Phillip G. Abshier, Bamberger & Abshier, Steven S. Crone, Foreman, Watson, and Crone, P.S.C., Owensboro, KY, for Unsecured Creditors' Committee.

Allen W. Holbrook, Ridley M. Sandidge, Jr., Frank Stainback, Jr., Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY, W. David Denton, Denton & Keuler, Paducah, KY, for Big Rivers Electric Corporation.

Harold Wayne Newton, Hawesville, KY, Allison Wade, L. Dale Owens, Edward C. Konieczny, Booth, Wade & Campbell, Steven W. Hardy, Steven A. Jackman, Wade & Campbell, LLP, Atlanta, GA, for NSA, Inc.

John E. Bickel, Jr., Thacker, Bickel, Hodskins & Thacker, Owensboro, KY, for Commonwealth Aluminum Corporation.

David C. Brown, Stites & Harbison, Victor B. Maddox, R. Greg Hovious, Tachau, Maddox & Hovious, P.S.C., G. Christopher Van Bever, Andalex Resources, Inc., Louisville, KY, for Alcan Aluminum Corporation.

Peter L. Ostermiller, Frank E. Haddad, Jr., Louisville, KY, for William H. Thorpe.

Thomas M. Williams, Ogden, Newell & Welch, Louisville, KY, Barbara Reid Har-

## MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the Court upon Eddie R. Brown's and E & M Coal Company's motion to dismiss the First Amended Complaint in Intervention of NSA, Inc., Commonwealth Aluminum Corporation and Alcan Aluminum Corporation ("the Aluminum Companies") [Record No. 252]. The Aluminum Companies have direct and derivative state law claims against Eddie R. Brown and E & M Coal Corporation ("the Eddie Brown

defendants") pending in this case. The derivative claims are for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, tortious interference with fiduciary obligation, and breach of implied covenant of good faith and fair dealing. The direct claims against the Eddie Brown defendants are for commercial bribery and a constructive trust. The Eddie Brown defendants argue that the Court should dismiss the Aluminum Companies' claims because of the lack of a direct injury and the filed rate doctrine.

## Lack of a Direct Injury

■ In a Memorandum Opinion and Order dated May 30, 1995, this Court dismissed Counts I and II (RICO and Robinson–Patman Act claims, respectively) of the Aluminum Companies' First Amended Complaint in Intervention because of "the direct-purchaser rule." As the Court explained in the Memorandum Opinion and Order, the direct-purchaser rule prohibits recovery under federal antitrust law or RICO by those who are not directly injured by the violator of these federal laws. Because the Aluminum Companies did not buy directly from the alleged violators, they could not recover under RICO or the Robinson–Patman Act.

■ The Eddie Brown defendants argue that the Court should dismiss the Aluminum Companies' state-law commercial bribery claim because the alleged bribery committed by the Eddie Brown defendants did not directly injure the Aluminum Companies. The Eddie Brown defendants wish to apply the direct-purchaser rule to the state-law commercial bribery claim.

KRS 518.020 states as follows:

(1) A person is guilty of commercial bribery when he:

(a) Offers, confers or agrees to confer any benefit upon any employee or agent without the consent of the latter's employer or principal with intent to influence his conduct contrary to his employer's or principal's best interests; or

(b) Offers, confers or agrees to confer any benefit upon any fiduciary without the consent of the latter's beneficiary with intent to influence him to act or conduct himself contrary to his fiduciary obligation.

(2) Commercial bribery is a class A misdemeanor.

KRS 446.070 provides, "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Therefore, Kentucky law provides a civil cause of action for those injured by a violation of the criminal commercial bribery statute.

The Aluminum Companies allege that they were injured by commercial bribery committed by the Eddie Brown defendants. Specifically, they allege that the commercial bribery induced Big Rivers Electric Corporation ("Big Rivers") to enter fraudulent coal contracts and that Big Rivers passed on the excessive coal costs to distribution cooperatives, which in turn passed them on to the Aluminum Companies and other ratepayers. Therefore, if the Aluminum Companies' allegations are true, as the Court must assume for purposes of a motion to dismiss, they were injured by the commercial bribery committed by the Eddie Brown defendants.

The direct-purchaser rule does not exist under Kentucky law. This Court refuses to apply the direct-purchaser rule to a Kentucky state-law claim for the first time. Whether the direct-purchaser rule should limit the class of injured parties able to recover for a violation of the commercial bribery statute is best left to the Kentucky courts. Accordingly, the Court denies the Eddie Brown defendants' motion to dismiss on this ground.

## The Filed Rate Doctrine

■ The Eddie Brown defendants argue that the "filed rate doctrine" bars the Aluminum Companies' claims because the Aluminum Companies are requesting this Court to address the reasonableness of rates set by the Kentucky Public Service Commission ("PSC"). The Eddie Brown defendants argue that the PSC has exclusive authority over coal rates and, therefore, that the Aluminum Companies cannot attack the rates in this Court. The Aluminum Companies argue that their claims do not attack the reason-

ableness of coal costs but, rather, simply seek compensation for the Eddie Brown defendants' tortious misconduct.

In *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), Keogh sued the defendant carriers and their officers and agents for conspiring to fix rates in violation of the Sherman Act. Keogh claimed that, but for the conspiracy, he would have paid lower rates than those he was required to pay. Accordingly, he requested that his damages, equal to the difference between the actual rate and what the rate would have been but for the conspiracy, be trebled. *Id.* at 159–60, 43 S.Ct. at 48–49.

The Supreme Court noted that the Interstate Commerce Commission had, in proceedings before it, determined that all the rates fixed were reasonable and nondiscriminatory, and had approved the rates that the defendant carriers charged. The Court went on to hold that Keogh, a private shipper, could not recover antitrust damages based on the lower rates he would have enjoyed absent the conspiracy. *Id.* at 161–62, 43 S.Ct. at 49. Justice Brandeis, writing for the Court, gave several reasons for dismissing the suit. Among them, he noted:

Section 7 of the Anti–Trust Act gives a right of action to one who has been "injured in his business or property." Injury implies violation of a legal right. *The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper.* The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier. And they are not affected by the tort of a third party. This stringent rule prevails, because otherwise the paramount purpose of Congress—uniform prevention of unjust discrimination—might be defeated. If a shipper could recover under Section 7 of the Anti–Trust Act for damages resulting from the exaction of a rate higher than that which would otherwise have prevailed, the amount recovered might, like a

rebate, operate to give him a preference over his trade competitors.

*Id.* at 163, 43 S.Ct. at 49–50 (emphasis added) (citations omitted).

Since *Keogh* was decided, the decisions of the Supreme Court have recognized and reinforced Justice Brandeis' statement that the filed rate defines the rights of the shipper/customer as against the carrier/utility. *See, e.g., Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 126, 110 S.Ct. 2759, 2765, 111 L.Ed.2d 94 (1990) ("This court has long understood that the filed rate governs the legal relationship between shipper and carrier."); *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 416, 106 S.Ct. 1922, 1926, 90 L.Ed.2d 413 (1986) (refusing to overrule *Keogh* and noting that Court in *Keogh* had reasoned that the legal right of the shipper against the carriers had to be measured by the filed rate); *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577–78, 101 S.Ct. 2925, 2930–31, 69 L.Ed.2d 856 (1981) (stating that filed rate doctrine "forbids a regulated entity to charge rates [to its customers] for its services other than those properly filed with the appropriate federal regulatory authority," and noting that " 'The considerations underlying the doctrine ... are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant.' " (quoting *City of Cleveland v. FPC,* 525 F.2d 845, 854 (D.C.Cir.1976)); *Montana–Dakota Util. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 250–52, 71 S.Ct. 692, 694–95, 95 L.Ed. 912 (1951) (utility/buyer of electricity sued utility/seller of electricity on the grounds that buyer's predecessor paid seller unreasonably high prices to seller for electricity; Court found that courts could not decide what reasonable rates during the past should have been and noted, "It is not the disembodied 'reasonableness' but that standard when embodied in a rate which the Commission accepts or determines that governs the rights of buyer and seller."). The lower courts have done the same. *See, e.g., Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18, 22 (2d Cir.1994) (stating that, "The filed rate doctrine bars suits against regulated

utilities [by ratepayers] grounded on the allegation that the rates charged by the utility are unreasonable." and that, "[W]e note that the filed rate doctrine does not leave regulated industries immune from suit under the RICO or antitrust statutes."); *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1455 (6th Cir.1988), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) (noting that in *Keogh,* the Supreme Court stated that the main purpose of the Interstate Commerce Act was the prevention of unjust discrimination, and that this required that ICC-approved rates be the sole source of a shipper's rights against a carrier).

In the face of all this authority that the filed rate doctrine applies to cases involving a suit by or against a utility, the movants have cited no authority stating that the doctrine applies where, as here, a regulated entity is not suing to charge rates for its services other than those properly filed with the appropriate regulatory authority, nor is the regulated entity being sued on the grounds that the rates charged by the utility are unreasonable. *See, e.g., Taffet v. Southern Co.,* 967 F.2d 1483, 1485 (11th Cir.1992), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992) (stating that cases raised question whether a private suit under RICO may be brought against a utility to recover for excessive charges for electrical power). This Court refuses to extend the filed rate doctrine to this case, where the utility and certain of its customers are on the same side of the case.

■ The filed rate doctrine recognizes that where a legislature has established a ratemaking scheme, the filed rate defines the legal relationship between shipper/customer and carrier/regulated utility. Further, the rights of the ratepayer in regard to the rate it pays are defined by the statutory scheme. *See Taffet,* 967 F.2d at 1490. Turning to Kentucky's ratemaking statutes, this Court finds that nothing in them or the cases interpreting them limits the rights ratepayers have against persons or entities who allegedly have harmed their utility.

The jurisdiction of the PSC extends to all utilities in Kentucky, and the PSC has "exclusive jurisdiction over the regulation of rates and service of utilities." KRS 278.040(2); *see also Smith v. Southern Bell Tel. & Tel. Co.,* 268 Ky. 421, 104 S.W.2d 961, 963 (1937) (holding that primary jurisdiction and authority to fix rates rested exclusively and primarily in the PSC). Utilities must file schedules with the PSC that show their rates, and no utility may "charge, demand, collect or receive from any person a greater or less compensation for any service rendered or to be rendered than that prescribed in its filed schedules." KRS 278.160; *see also Boone County Sand & Gravel Co. v. Owen County Rural Elec. Coop. Corp.,* 779 S.W.2d 224, 225–26 (Ky.Ct.App.1989) (holding that under KRS 278.160, public utility could not be estopped from collecting undercharges even where the customer was negligently under-billed; to hold otherwise would result in under-billed customer receiving rate preference in contravention of statutory scheme). All utilities have the right to "demand, collect and receive fair, just and reasonable rates." KRS 278.030(1). They may not, however, "as to rates or service, give any unreasonable preference or advantage to any person or subject any person to any unreasonable prejudice or disadvantage." KRS 278.170. The PSC has "original jurisdiction over complaints as to rates ... of any utility," and upon a written complaint "made against any utility by any person that any rate in which the complainant is directly interested is unreasonable or unjustly discriminatory," the PSC must proceed to make an investigation. KRS 278.260; *see also Smith,* 104 S.W.2d at 965 (holding that PSC had primary jurisdiction to pass upon rates and whether same were reasonable; consequently, court found it improper to pass upon the reasonableness of the charges complained of by appellant). Whenever the PSC, on its own motion or upon a complaint filed pursuant to KRS 278.260, and after a hearing had on reasonable notice, determines that any rate is unreasonable, unjust, insufficient, unjustly discriminatory or otherwise in violation of Chapter 278, the PSC must prescribe a just and reasonable rate to be followed prospectively. KRS 278.270.

■ While all of these statutes and cases clearly set forth the underlying principles of

the filed rate doctrine, neither they nor the doctrine forbids a customer of a utility from suing a person or an entity that the customer claims has injured the utility and the customer. In fact, where a customer sued a utility for breach of contract, the Kentucky Court of Appeals had this to say:

> [A]ppellant seeks damages for breach of contract. Nowhere in Chapter 278 do we find a delegation of power to the PSC to adjudicate contract claims for unliquidated damages. Nor would it be reasonable to infer that the Commission is so empowered or equipped to handle such claims consistent with constitutional requirement.

*Carr v. Cincinnati Bell, Inc.*, 651 S.W.2d 126, 128 (Ky.Ct.App.1983) (citing Ky. Const. § 14). Given this strong statement as to the limitations on the PSC's power to resolve conflicts between utilities and customers, this Court will not presume that the PSC's jurisdiction extends to a complaint by a customer against a person or entity that has allegedly harmed the customer's utility as well as the customer, especially because the ratemaking scheme does not delegate such power to the PSC.

While cognizant that the Aluminum Companies have filed with the PSC claims which are within PSC jurisdiction, this Court is nonetheless aware that the Aluminum Companies may be able to recover in this Court for fuel costs caused by the Eddie Brown defendants for which recovery is unavailable through the PSC. Thus, the Court is not persuaded by the Eddie Brown defendants' argument that the Aluminum Companies are seeking recovery for the same alleged damages, i.e., "excessive fuel costs," from both the PSC and this Court.

For the reasons stated above, this Court concludes that the filed rate doctrine does not bar the Aluminum Companies, customers of Big Rivers, from suing the Eddie Brown defendants.

### Conclusion

The Court ORDERS that the Eddie Brown defendants' motion to dismiss the Alu-

minum Companies' First Amended Complaint in Intervention is DENIED.