ATLANTIS EXPRESS, INC., Appellant,

v.

ASSOCIATED WHOLESALE
GROCERS, INC.,
Appellee.

No. 92–1771.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1992.

Decided March 26, 1993.

Paul O. Taylor, Bloomington, MN, argued (Thomas E. Wolff, Eden Prairie, MN, on the brief), for appellant.

Benjamin F. Mann, Kansas City, MO, argued (Michael M. Tamburini, on the brief), for appellee.

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

BOWMAN, Circuit Judge.

Atlantis Express, Inc., appeals from the order of the District Court [1] granting summary judgment for Associated Wholesale Grocers, Inc. (AWG). We affirm.

Atlantis is a motor carrier, presently insolvent. In 1987, it entered into a contract with AWG to transport goods for AWG. AWG agreed to pay for such services at the rates negotiated by the parties and identified in the contract. Upon performing the specified services, Atlantis invoiced AWG at the contract rate, and AWG paid those invoices in full.

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

In 1990, Atlantis sued AWG in Minnesota state court for the difference between the negotiated rate AWG paid for Atlantis's services and the higher "filed rate," the tariff Atlantis contends is on file with the Interstate Commerce Commission (ICC) and thus due under federal law. AWG removed the case to federal court and moved for summary judgment. The court granted AWG's motion, holding that the tariff relied upon by Atlantis in seeking recovery of undercharges never was effectively filed within the meaning of the law and thus was unenforceable.

■ In order to understand the claim in this case, it is necessary to understand the "filed rate doctrine," whereby a shipper must pay the rate a common carrier has filed with the ICC, regardless of any separately negotiated rate. *See Atlantis Express, Inc. v. Standard Transp. Servs., Inc.,* 955 F.2d 529, 531 (8th Cir.1992). Under the Interstate Commerce Act, a carrier may provide transportation "only if the rate ... is contained in a tariff that is in effect" under the law, and the "carrier may not charge or receive a different compensation for that transportation ... than the rate specified in the tariff." 49 U.S.C. § 10761(a) (1988). "[T]he statute does not permit either a shipper's ignorance or the carrier's misquotation of the applicable rate to serve as a defense to the collection of the filed rate." *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 120, 110 S.Ct. 2759, 2763, 111 L.Ed.2d 94 (1990). In *Maislin,* a carrier challenged the ICC's so-called "Negotiated Rates" policy, which declared that efforts to collect undercharges resulting from charging privately negotiated rates were an "unreasonable practice" and thus were impermissible under 49 U.S.C. § 10701 (1982). The Court, in voiding the "Negotiated Rates" policy, reiterated its view that the Interstate Commerce Act, "as it incorporates the filed rate doctrine, forbids as discriminatory the secret negotiation and collection of rates low-

er than the filed rate." *Maislin,* 497 U.S. at 130, 110 S.Ct. at 2768.

The District Court found that Atlantis neglected a step in the filing process with the ICC, with the result that one of the tariffs necessary for calculating a rate was not on file as to Atlantis, and thus Atlantis's tariff never was effectively filed. Because the tariff was not filed within the meaning of the Interstate Commerce Act, the court held that the recovery of undercharges in this case was impermissible.

■ When Atlantis purported to file its tariff with the ICC, it chose to refer to a distance guide for determination of the distances between locations covered by the distance rates, rather than to publish the distances between all locations covered by the rates or to refer to maps attached to the tariff. *See* 49 C.F.R. § 1312.30(c)(1) (1991). Atlantis referred to the HGB 100 mileage guide, published by Household Goods Carriers' Bureau (HGCB), whose members are carriers like Atlantis. Atlantis did not, however, legally participate in the distance guide because it did not execute a valid power of attorney. Before a carrier may participate in a tariff issued to an agent such as HGCB, the carrier is required to execute a power of attorney or a concurrence.[2] *Id.* § 1312.4(d) (1991). A tariff filed without an effective power of attorney is "void as a matter of law." *Id.*

Atlantis concedes that the tariff it submitted to the ICC for filing referred to the HGB mileage guide, and that Atlantis failed to execute a power of attorney to participate in the guide. Atlantis claims, however, that the rejection of its tariff would be retroactive nullification of an effective tariff, which ordinarily is not permitted under the Interstate Commerce Act. Atlantis also contends that the failure to execute a power of attorney is a technical violation that does not render the tariff unenforceable, and that recent changes in the regulations demonstrate the ICC's in-

---

**2.** "Powers of attorney may be given by a carrier to a carrier or an agent for the purpose of publishing and filing tariffs." 49 C.F.R. § 1312.-10(a) (1991). A concurrence is executed by a carrier who wishes "to participate in joint rates

or provisions published in a tariff filed by another carrier or agent." *Id.* § 1312.10(b)(1). The agreement here required a power of attorney.

tention that Atlantis's tariff should not be rejected because of the failure to execute a power of attorney. Atlantis further contends that, if we agree with the result reached by the District Court, we should remand to the ICC for a determination of the reasonable rate AWG should have paid in the absence of an effectively filed tariff.

Summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the decision to grant summary judgment *de novo*, applying the same standard as the District Court. *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991).

■] Atlantis does not take issue with the premise that the mileage guide is a "tariff" that requires a power of attorney to be effectively filed. *See* 49 C.F.R. § 1312.4(d). Under the regulations, a tariff is "a publication containing rates, classification ratings, rules, regulations, or other provisions, as amended, filed in a carrier's or an agent's name." *Id.* § 1312.1(b)(35). Clearly the HGB 100 is a publication containing "other provisions," that is, distances to be used in calculating rates. Neither party contests that the mileage guide was filed and, while HGCB is not a carrier, it is an agent: "a person, association or corporation authorized to publish and file rates and provisions for a carrier's account in tariffs published in the agent's name." *Id.* § 1312.1(b)(2). Because the HGB 100 mileage guide is a tariff, in which Atlantis failed to participate by executing a power of attorney, Atlantis's tariff is void as a matter of law. *Id.* § 1312.4(d).

In *Jasper Wyman & Son, et al.*, 8 I.C.C.2d 246 (1992), *appeal docketed sub nom., Overland Express, Inc. v. I.C.C.*, No. 92–1037 (D.C.Cir. Jan. 31, 1992), the ICC concluded that a mileage guide, such as HGB 100, is a tariff. *Id.* at 249 & n. 6, 251. In *Jasper Wyman*, as in the case here, the carrier failed to execute a power of attorney to participate in a mileage guide. The ICC determined that the mileage guide was a "tariff" requiring a power of attorney for participation, and that the

carrier's tariff was not effectively filed because the carrier had failed to execute a power of attorney. Similarly, in another case the Fifth Circuit held that a mileage guide is a tariff and denied the recovery of undercharges because the carrier referred to a mileage guide but failed to execute a power of attorney and therefore failed to participate in the guide. *Freightcor Servs., Inc. v. Vitro Packaging, Inc.*, 969 F.2d 1563, 1566 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). We agree with both the ICC's interpretation of its own regulations and with our sister circuit's conclusion.

Atlantis contends that the provision in ICC regulation 49 C.F.R. § 1312.4(d) that voids tariffs where powers of attorney or concurrences are required but not executed violates the teaching of the Supreme Court in *I.C.C. v. American Trucking Associations, Inc.*, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984). We disagree. In *American Trucking*, the Court made it clear that the ICC may not "nullify effective tariffs retroactively." *Id.* at 362, 104 S.Ct. at 2463. Because we conclude that Atlantis's tariff was not effectively filed, we hold that section 1312.4(d) does not result in the retroactive rejection of a filed tariff. Atlantis's tariff was not effectively filed because it was incomplete; rates were impossible to calculate from the information Atlantis properly filed with the ICC. We reject the notion that a tariff is "effective" merely because the ICC accepts and publishes a distance rate. In the absence of distances to accompany distance rates, there simply is no tariff on file, notwithstanding the ICC's acceptance and publication of the rates. The rates are meaningless without the distances.

■ We disagree with Atlantis's characterization of its failure to execute a power of attorney as a minor "irregularity" in filing that may not be used to deem the tariff ineffectively filed. According to Atlantis's argument, for which it cites ICC and Supreme Court precedent, a technical problem with the filing should not invalidate the purportedly filed tariff. The filing

error here, however, is substantive. The ICC promulgated a regulation that voids tariffs where participation in another's tariff is not evidenced by an effective power of attorney—the very situation we have here. Section 1312.4(d) sets this "irregularity" apart from those the ICC and Supreme Court have held do not invalidate a filed tariff. Atlantis seeks to have AWG pay its "filed" rate, when it was impossible to calculate the rate from the information Atlantis properly filed with the ICC. A carrier that seeks to enforce a "filed" rate must be prepared to show that it has done what the regulations of the ICC require for effective filing.

In its final argument for reversal, Atlantis contends that we should infer a sea change in ICC policy from a 1989 revision of tariff regulations. Essentially, Atlantis's argument is this: when 49 C.F.R. pt. 1312 replaced the rules found at 49 C.F.R. pt. 1310, it was because the ICC desired to make the tariff filing rules less strict and more flexible. According to Atlantis, AWG's reading of the regulations in part 1312, and the ICC's enforcement of them, violate the intent of the ICC in revising the tariff regulations. Specifically, under the 1989 revision, the ICC no longer required that powers of attorney or concurrences to participate in another's tariff be filed with the ICC. The new regulations, however, continued to require that powers of attorney or concurrences be executed, and added the penalty provision of 49 C.F.R. § 1312.4(d).

Atlantis argues that the 1989 revision of the regulations demonstrates that the ICC promulgated 49 C.F.R. § 1312.4(d) in violation of its statutory authority under 49 U.S.C. § 10762(b) (1988). Atlantis raises this issue for the first time on appeal to this Court and makes no showing that a miscarriage of justice will result absent our consideration of the issue. *See Seniority Research Group v. Chrysler Motor Corp.*, 976 F.2d 1185, 1187 (8th Cir.1992). The issue therefore is not properly before us, and we do not consider it. *See O.R.S. Distilling Co. v. Brown–Forman Corp.*, 972 F.2d 924, 926 (8th Cir.1992) ("A party may not assert new arguments on appeal

of a motion for summary judgment."). We note, however, that it is the ICC's own language in promulgating part 1312, and not a congressional mandate, on which Atlantis relies for its argument regarding the ICC's alleged misuse of statutory authority. Yet the ICC, in its interpretation of section 1312.4(d) in *Jasper Wyman*, reached the same conclusion we do here. *Jasper Wyman*, 8 I.C.C.2d at 251–52. With the deference due an administrative agency in the interpretation of the statutes it is charged with enforcing, not to say the even greater deference accorded the ICC's interpretation of its own regulations, we would find it difficult if not impossible to reach the conclusion Atlantis urges upon us. *See Arkansas v. Oklahoma*, —— U.S. ——, ——, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Criger v. Becton*, 902 F.2d 1348, 1351 (8th Cir.1990). Further, we do not find in the 1989 revision of the regulations the dramatic loosening of the rules that Atlantis suggests.

We do not address Atlantis's request that we order remand to the ICC for determination of a reasonable rate, since in the District Court Atlantis did not raise any question concerning the reasonableness of the rates it negotiated with AWG. *See Seniority Research Group*, 976 F.2d at 1187. To the contrary, Atlantis resisted AWG's suggestion that the District Court remand to the ICC for its evaluation of the reasonableness of the rates at issue in this case, and Atlantis will not now be heard to claim that justice requires such a remand.

The judgment of the District Court is affirmed.