3 F.3d 966
 62 USLW 2161
 SECURITY SERVICES, INC., f/k/a Riss International
Corporation, Debtor-in-Possession, Plaintiff-Appellant,
v.
P-Y TRANSPORTATION, INC., f/k/a C.T.S. Brokerage, Inc.,
(92-3992); Ed Swierkos Enterprises, Inc.
(93-3210), Defendants-Appellees.
 Nos. 92-3992, 93-3210.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 22, 1993.
Decided Aug. 30, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 12, 1993.
 
 Robert B. Walker (argued), Joseph L. Steinfeld, Jr., John T. Siegler (briefed), Sims, Walker & Steinfeld, Washington, DC, Paul O. Taylor, Harris & Taylor, Minneapolis, MN, Charles E. Natkins, Marc A. Zellen (briefed), Friedman, Natkins & Freedman, Solon, OH, Timothy J. Boone, Sellman & Boone, Columbus, OH, for Security Services, Inc.
 Robert L. Cope (argued), Edward J. Kiley (briefed), Grove, Jaskiewicz, Gilliam & Cobert, Washington, DC, Ronald Tamburrino, Cleveland, OH, David M. Greim, Jr., James W. Muldoon, David A. Ferris, Muldoon & Ferris, Columbus, OH, for P-Y Transp., Inc. and Ed Swierkos Enterprises, Inc.
 William J. Augello (briefed), Augello, Pezold & Hirschmann, Northport, NY, for RPL Associates, Inc. amicus curiae.
 Before: KENNEDY and NORRIS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 In these consolidated cases, plaintiff, Security Services, Inc. ("Security"), a former motor carrier, appeals orders of the district courts granting summary judgment to defendant shippers. 817 F.Supp. 677; 829 F.Supp. 911. Security argues that the interpretation of ICC regulations adopted by the district court amounts to an unlawful retroactive rejection of its filed freight tariff. Due to recent developments in the case law, we find Security's arguments persuasive, and reverse and remand.
 
 I.
 
 2
 Security was engaged in business as Riss International Corporation, a motor common carrier licensed by the ICC to engage in the for-hire transportation of freight. Security transported freight for defendant, P-Y Transportation, Inc. ("P-Y"), between May 26 and October 10, 1989, and for defendant, Ed Swierkos Enterprises, Inc. ("Swierkos"), between September 21 and October 5, 1989. Security issued invoices for this shipping to both defendants, and they paid the charges.
 
 
 3
 Under the Interstate Commerce Act, 49 U.S.C. Secs. 10101-11917, motor common carriers must file the rates that they charge customers for shipping (also known as "tariffs") with the ICC, and both carriers and their customers (known as "shippers") must strictly adhere to these rates. See 49 U.S.C. Secs. 10761(a), 10762(a)(1); Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). This is known as the "filed rates doctrine." Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). Its purpose is to ensure that rates are both nondiscriminatory and reasonable for all shippers. Id. at 119, 110 S.Ct. at 2762.
 
 
 4
 Despite a tradition of strict enforcement of the doctrine by the courts, see id. at 127-28, 110 S.Ct. at 2766-67, the concept appears to have been disregarded by numerous carriers, especially during the last decade's move toward deregulation, when they ignored the filed rates and negotiated lower rates with some or all of their customers. See Reiter v. Cooper, --- U.S. ----, ----, 113 S.Ct. 1213, 1216, 122 L.Ed.2d 604 (1993). Some of these carriers later went bankrupt, and when audits revealed the lower negotiated rates, the carriers or their bankruptcy trustees sued their former customers to recover the difference between the filed rate and the rate that was actually charged. Id.
 
 
 5
 That is what occurred in these two cases. The Supreme Court has held that under such circumstances, even though carrier and shipper negotiated a lower rate, the shipper remains liable to pay the full filed rate. Maislin, 497 U.S. at 130-31, 110 S.Ct. at 2768. Faced with this sort of strict adherence to the filed rates doctrine, the shippers argue that Security cannot rely upon the rates it filed, since those rates never became effective because Security failed to follow the ICC's regulatory requirements for filing its rates.
 
 
 6
 The tariff or mileage rate that Security was required to file under the filed rates doctrine had to include two parts: (1) the rate Security charged per mile, and (2) the distance in miles between the cargo's origin and its destination, which is multiplied by the rate per mile when determining the shipping charge. See 49 C.F.R. Sec. 1312.30(c).
 
 
 7
 What Security actually filed with the ICC was a Tariff 501-B, which stated only the rate Security charged for specific numbers of miles. In order to establish the second required element, the distance in miles between various points, Security's Tariff 501-B referred to the Household Goods Carriers Bureau ("HGCB") Mileage Guide No. 12 published by HGCB as its Tariff 100-A, which was effective from February 28, 1983 through May 30, 1985.
 
 
 8
 The HGCB is one of a number of groups of motor carriers that associate to negotiate joint tariff rates. According to ICC regulations and the HGCB itself, a carrier must participate in HGCB's rates if it is to refer to and rely upon the HGCB Mileage Guide to satisfy the second part of the filing requirement. Jasper Wyman & Son, 8 I.C.C.2d 246, 248-52, 255 n. 23 (1992) (citing 49 C.F.R. Sec. 1312.27(e) and HGCB Mileage Guide 100-B at 2), review granted sub nom. Overland Express, Inc. v. ICC, 996 F.2d 356 (D.C.Cir.1993).
 
 
 9
 In order to participate in the HGCB rates, Security was required by ICC regulations to execute in favor of HGCB a power of attorney, permitting HGCB to act as Security's agent in filing the mileage guide with the Commission. The regulations state that "[a]bsent effective ... powers of attorney, tariffs are void as a matter of law." 49 C.F.R. Sec. 1312.4(d).[1]
 
 
 10
 Security executed a power of attorney and participated in the HGCB tariff, but concedes that its participation in the HGCB was cancelled as of February 19, 1985 because it failed to pay HGCB's required participation fees. HGCB considers a power of attorney "dead" if a carrier fails to renew it by submitting the required participation fees. Jasper Wyman, 8 I.C.C.2d at 253. The district courts in the instant cases, deferring to the ICC's interpretation of its regulations in Jasper Wyman, held that because Security failed to pay its fees for four years after HGCB cancelled its participation, its power of attorney was no longer effective. The district courts reasoned that under 49 C.F.R. Sec. 1312.4(d), as interpreted by the ICC as well as by the Courts of Appeals for the Fifth and Eighth Circuits, Security was not participating in the HGCB rates when it hauled for P-Y and Swierkos. Therefore, Security's own tariff, which referred to the HGCB rates, was treated by the district courts as if it had never been effectively on file, and was void as a matter of law. 49 C.F.R. Sec. 1312.4(d); Jasper Wyman, 8 I.C.C.2d at 255. See also Atlantis Express, Inc. v. Associated Wholesale Grocers, Inc., 989 F.2d 281, 283 (8th Cir.1993) (holding that when carrier fails to participate in a listed tariff by executing valid power of attorney, its purported tariff is void as matter of law); Freightcor Servs., Inc. v. Vitro Packaging, Inc., 969 F.2d 1563, 1567-68 (5th Cir.1992) (same), cert. denied, --- U.S. ----, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). The district courts therefore held that Security could not rely upon that tariff to seek additional shipping charges from defendants.
 
 II.
 
 11
 Security's primary objection to the holdings below is that they follow the ICC's interpretation of 49 C.F.R. Sec. 1312.4(d) in its Jasper Wyman ruling. Security contends that Jasper Wyman amounts to a retroactive rejection of an effective tariff, which is impermissible under the Supreme Court's holding in ICC v. American Trucking Ass'ns, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984).
 
 
 12
 In American Trucking, the Court held that the ICC lacked explicit statutory authority to retroactively reject effective tariffs, but could do so as part of its implicit discretionary authority, provided that two criteria are satisfied: first, the retroactive rejection "must further a specific statutory mandate of the Commission, and second, the exercise of [the retroactive rejection] power must be directly and closely tied to that mandate." American Trucking, 467 U.S. at 364, 367, 104 S.Ct. at 2464, 2465.
 
 
 13
 Until quite recently, the courts of appeals had uniformly rejected arguments from carriers that the ICC's interpretation of its regulations in Jasper Wyman violated the two-part test of American Trucking. See Security Servs., Inc. v. K Mart Corp., 996 F.2d 1516, 1525-26 (3d Cir.1993) (holding that the ICC's interpretation of 49 C.F.R. Sec. 1312.4(d) directly furthers the statutory mandate to maintain a fair and efficient transportation market in that it requires the disclosure of the identity of the carriers participating in every tariff) (citing Freightcor Servs., 969 F.2d at 1570-71 (same)); Atlantis Express, 989 F.2d at 283 (holding that American Trucking test need not be applied when tariff was not effectively filed under 49 C.F.R. Sec. 1312.4(d) as interpreted by Jasper Wyman ).
 
 
 14
 However, the Court of Appeals for the D.C.Circuit recently reversed the ICC's Jasper Wyman ruling by granting the petition for review in Overland Express, Inc. v. ICC, 996 F.2d 356 (D.C.Cir.1993). In Overland, the court first rejected Jasper Wyman's conclusion that a carrier's failure to keep its tariff in compliance with 49 C.F.R. Sec. 1312.4(d) is tantamount to that tariff's never having been effective at all. According to the opinion in Overland, when the Supreme Court recognized limitations on the ICC's authority to reject effective tariffs in American Trucking, it used the phrase "effective tariff" simply to distinguish tariffs that had been accepted by the ICC without objection and had gone into effect (which the Commission has only limited implied authority to reject) from tariffs still in the application process, i.e., prior to their effective dates (which the Commission has express statutory authority to reject). Overland, 996 F.2d at 360 (citing American Trucking, 467 U.S. at 360, 104 S.Ct. at 2462). The Overland court concluded that the ICC cannot evade American Trucking's limitation on its power to reject tariffs retroactively on the basis of what amounts to a legal fiction, that the carrier's failure to remain in compliance with 49 C.F.R. Sec. 1312.4(d) transforms a previously effective tariff into one that was never effective. Id. "That a tariff was effective or in effect is what makes rejection retroactive.... The [ICC] is restricted whenever it attempts to invalidate (or alter the past effects of) a tariff after the application period has ended." Id.
 
 
 15
 Having found that the ICC's interpretation of 49 C.F.R. Sec. 1312.4(d) in Jasper Wyman did indeed constitute retroactive rejection of an effective tariff, the court in Overland then applied the two-part American Trucking test to determine whether that retroactive rejection was directly and closely tied to furthering a specific statutory mandate of the ICC. Id. (citing American Trucking, 467 U.S. at 367, 104 S.Ct. at 2465).
 
 
 16
 The court concluded that the retroactive rejection permitted by Jasper Wyman failed both prongs of the American Trucking test. First, rejecting a carrier's previously effective tariff under 49 C.F.R. Sec. 1312.4(d) for failure to keep its power of attorney up to date does not further any specific statutory mandate of the ICC. Indeed, such an approach "turns the filed rate doctrine on its head," since the filed rate doctrine is "undermined ... by an ICC policy that would make the [filed] rate unreliable unless a shipper took the extraordinary step of determining whether a carrier's tariff filing was defective because its power of attorney was not up to date." Id. 996 F.2d at 360, 361. Therefore, as the court persuasively observed, "[i]t really makes little sense ... to argue ... that retroactive rejection (that is, deviation from the filed rate) is necessary to promote the filed rate doctrine." Id. at 361 n. 6.[2]
 
 
 17
 The court emphasized that "[a]s long as the tariff documents 'were received and placed on file by the [ICC] without any objection whatever as to their form and ... were adequate to give notice' of the rate to be charged, the filed rate doctrine applies." Id. at 361 (quoting Berwind-White Coal Mining Co. v. Chicago & Erie R.R. Co., 235 U.S. 371, 375, 35 S.Ct. 131, 132, 59 L.Ed. 275 (1914)).
 
 
 18
 The court of appeals also concluded that "even if ensuring that carriers have valid powers of attorney on file (and guaranteeing that the mileage guide publishers are paid their membership fees) is a permissible statutory goal, the draconian remedy of retroactive rejection does not seem directly and closely tied to that policy." Id. 996 F.2d at 362. The court noted that less drastic remedies such as suits for actual damages would be adequate to remedy any injuries caused by unauthorized references to mileage guides, and observed that "[c]omplete abrogation of the filed rate is only necessary if the [ICC's] real purpose is to eliminate the trustees' undercharge suits." Id. at 362. It follows then, according to the court, that the Jasper Wyman decision "constitutes a retroactive tariff rejection in excess of [the ICC's] statutory authority and violates the filed rate doctrine." Id. at 362.
 
 III.
 
 19
 Courts of Appeals for the Third, Fifth, and Eighth Circuits have rejected arguments similar to those advanced by Security here--indeed, Security was also the plaintiff carrier in the case arising in the Third Circuit. Security Servs., 996 F.2d 1516 (3d Cir.1993); Atlantis Express, 989 F.2d 281 (8th Cir.1993); Freightcor Servs., 969 F.2d 1563 (5th Cir.1992).
 
 
 20
 However, these opinions were released prior to the D.C. Circuit's opinion in Overland, and each relied heavily upon the reasoning of Jasper Wyman, which Overland struck down. While this court is not required to follow Overland, the ICC is. Since Overland will require the ICC to revisit the conclusions it reached in Jasper Wyman, we adopt the reasoning of the D.C. Circuit in Overland, and hold that so long as Security's tariff documents were received and placed on file by the ICC without any objection as to their form, and were adequate to give notice of the rate to be charged, the filed rate doctrine applies, and Security may rely upon the filed rates in a suit to collect undercharges. Overland, 996 F.2d at 361.
 
 IV.
 
 21
 For the foregoing reasons, the judgments of the district courts are reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The relevant text of 49 C.F.R. Sec. 1312.4(d) reads:
 Concurrences and powers of attorney. Concurrences and powers of attorney shall not be filed with the Commission. However, a carrier may not participate in a tariff issued in the name of another carrier or an agent unless a power of attorney or concurrence has been executed. Absent effective concurrences or powers of attorney, tariffs are void as a matter of law.
 
 
 [2]
 Overland also dismissed the Fifth Circuit's suggestion in Freightcor Servs., 969 F.2d at 1570, that this retroactive rejection furthers a specific statutory mandate in 49 U.S.C. Sec. 10762(a)(1), which states that the ICC "may prescribe other information that motor common carriers shall include in their tariffs." Overland, 996 F.2d at 361